# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

Civil Action No. _____

BQC, INC. and HARRY JACOBVITZ, as Trustee of the BUSH REALTY TRUST,

    Plaintiffs,

v.

CYCLE SOLVE CORPORATION OF NEW ENGLAND, ADVANCED LIQUID RECYCLING, INC., DAVID J. CARABETTA, JON J. MCKIERNAN, BRIAN ABELY, JAMES ABELY, and WILLIAM C. MORRIS, JR.,

    Defendants.

## COMPLAINT

1. Plaintiffs BQC, Inc. ("BQC") and Harry Jacobvitz, as Trustee of the Bush Realty Trust ("Bush Realty"), (BQC and Bush Realty are collectively referred to as "Bush") bring this action seeking a declaration of rights, and damages under M.G.L. c. 21E, negligence, nuisance, and trespass as a result of actions or inactions by the Defendants Cycle Solve Corporation of New England ("Cycle Solve"), Advanced Liquid Recycling, Inc. ("Liquid Recycling"), David J. Carabetta, Jon J. McKiernan, Brian Abely, James Abely, and William C. Morris Jr., (collectively referred to as the "Defendants") which resulted in a release of oil and or hazardous materials ("OHM") onto Bush's property.

## PARTIES

2. Plaintiff BQC is a Massachusetts Domestic Company with a principal office located at 88 Faunce Corner Rd., Unit 245, North Dartmouth, Massachusetts 02747.

1396765_1

3. Plaintiff Harry Jacobvitz, as Trustee of Bush Realty, resides at 30 Champion Terrance, North Dartmouth, Massachusetts 02747.

4. Defendant Cycle Solve is a Connecticut corporation with a principal office located at 14-16 West Main Street, Meriden, Connecticut 06451. Cycle Solve's registered agent is CT Corporation System with an address of 155 Federal Street, Ste. 700, Boston, Massachusetts 06451. Upon information and belief, on June 18, 2012, Cycle Solve was involuntarily revoked by the Massachusetts Secretary of State.

5. Defendant Liquid Recycling is a Connecticut corporation with its principal office located at 14-16 West Main Street, Meriden, Connecticut 06451. Liquid Recycling's registered agent is CT Corporation System with an address of 155 Federal Street, Ste. 700, Boston, Massachusetts 06451. Upon information and belief, on June 18, 2012, Liquid Recycling was involuntarily revoked by the Massachusetts Secretary of State.

6. Upon information and belief, Defendant Jon McKiernan resides at 122 Newfield Street, Apartment A, Middletown, Connecticut 06457. Upon information and belief, Jon McKiernan was or is currently the President, Treasurer, and Director of Liquid Recycling and the Treasurer and Director of Cycle Solve.

7. Upon information and belief, Defendant William C. Morris, Jr. resides at 53 Elm Street, Wethersfield, Connecticut 06109. Upon information and belief, William C. Morris, Jr. was or is currently the Vice President and Director of Liquid Recycling and the Director of Cycle Solve.

8. Upon information and belief, Defendant Brian Abely resides at 104 Elizabeth Lane, Middletown, Connecticut 06459. Upon information and belief, Brian Abely was or is

currently the Secretary and Director of Liquid Recycling and the Vice President and Director of Cycle Solve.

9. Upon information and belief, David Carabetta resides at 176 Broad Street, Meriden, Connecticut 06450. Upon information and belief, David Carabetta was or is currently the Director of Liquid Recycling and the President and Director of Cycle Solve.

10. Upon information and belief, James Abely resides at 525 Crown Street, Meriden, Connecticut 06450. Upon information and belief, James Abely was or is currently the Director of Advanced Recycling and they Secretary and Director of Cycle Solve.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction pursuant to 28 U.S.C. §1332.

12. The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship between all Plaintiffs and Defendants as Plaintiffs are citizens of Massachusetts and Defendants are citizens of Connecticut.

13. Venue is proper pursuant to 28 U.S.C. §1391(c) because the Defendants are subject to personal jurisdiction in this District. Defendants maintain offices, have agents, transact business, and/or are found within this judicial District.

## FACTS

14. BQC and Bush Realty are the current owners and operators of the property located at 173 Spring Street in Fairhaven, Massachusetts (the "Property").

15. Upon information and belief, Cycle Solve and Liquid Recycling have the same parent company, and/or are subsidiaries of each other, and/or have the same managers, owners, board of directors, officers and are interrelated entities. Upon information and belief, Cycle Solve and Liquid Recycling both have a principal office located at 14-16 West Main Street, Meriden,

Connecticut, and have the same officers and/or directors which include Jon J. McKiernan, William C. Morris, Brian Abely, David J. Carabetta, and James Abely. See Secretary of State summaries for Cycle Solve and Liquid Recycling, attached as Exhibit A.

16. Upon information and belief, Cycle Solve, Liquid Recycling, Jon J. McKiernan, William C. Morris, Brian Abely, David J. Carabetta, and James Abely had actual control of the activities of transporting and collecting PCE from the Property and had the authority to control activities related to the business. Upon information and belief, they had control of the Facility's finances, employees, and daily business operations; responsibility for the maintenance of its environmental controls; and receipt of the economic benefits of the Facility.

17. On or about 1986, Bush constructed a dry cleaning facility (the "Facility") at the Property. Upon information and belief, prior to constructing the Bush dry cleaning facility, a single-family house occupied the Property.

18. From approximately 1986 to 1995, Bush utilized Suprema dry-to-dry, dry-cleaning machines at the Facility. In 1995, Bush replaced the Suprema machines with Multimatic dry-to-dry, dry-cleaning machines which were used until approximately 2006. The Suprema and Multimatic machines used tetrachloroethylene, also known as perc or PCE, but were closed loop systems, meaning that no PCE transferred outside of the Machines from one machine to another. The entire process, including using clean PCE, cleaning clothes, distilling used PCE, and generating waste PCE takes place in one machine. This minimizes the possibility for the release of any PCE during the entire dry-cleaning process. See Affidavits of Vivian Figueiredo, James LaRose and Harry Jacobvitz, attached as Exhibits 1, 2, and 3, respectively, of the July 27, 2012 Notice of Claim, which is attached as Exhibit B to this Complaint.

19. From approximately 1986 to 2006 when Bush utilized used PCE at the Facility, the Suprema and Multimatic machines were equipped with containment bases whereby if any leak occurred it would be collected in the containment base and recycled back into the machine to prevent releases to the environment.

20. Harry Jacobvitz, the president of Bush, Vivian Figueiredo, the Accounting Manager, and James LaRose, the Plant Manager, never observed a leak or spill of PCE from the dry-cleaning machines or through the containment base during the dry-cleaning process. See Exhibits 1, 2, and 3 to Exhibit B to this Complaint.

21. Bush appropriately and prudently was careful with the use, handling, and disposal of PCE during the times it was used at the operations.

22. In 2006, Bush began to use GreenEarth dry-cleaning machines instead of Multimatic dry-to dry machines. The GreenEarth machines do not use PCE.

23. In the beginning of 1986, Bush contracted with the Defendants for the delivery of new PCE and the removal of spent PCE.

24. In July of 2005, the Defendants notified Bush that a spill of PCE occurred during a delivery and pick-up of spent PCE in the rear of the building.

25. An employee of the Defendants informed Mr. LaRose that there was a minor release and that the employee had used speedy dry to clean the release. The Plaintiffs were lead to believe that spilled PCE was fully cleaned up by the Defendants' employee. The employee further informed Mr. LaRose that in his opinion, the spill did not need to be reported to any regulatory authorities. Exhibits 1 and 2 to Exhibit B to this Complaint.

26. The Defendants and/or their employee(s) and agent(s) solely caused this release during its delivery of PCE from the Cycle Solve truck.

27. Bush is not aware of any other possible releases of PCE. Bush always took the precaution to equip the dry cleaning operation with containment bases and other methods for preventing and protecting spills.

28. The spill caused by Cycle Solve in July 2005 was the sole cause of PCE found in soil and groundwater at the Property.

29. In July 2010, during the process of applying for refinancing of the Bush Realty Trust property, IES, Inc. completed an ASTM Phase II report on behalf of the bank, the Washington Trust Company, and Bush. See IES Report, attached as Exhibit 4 to the July 27, 2012 Notice of Claim, which is Exhibit B to this Complaint.

30. The IES Report indicated that a reportable release of PCE was found at the Property.

31. While the IES Report was dated July 21, 2010, Bush did not receive the report nor was notified of its result until October 15, 2010. Bush had no knowledge of a reportable release of PCE prior to October 15, 2010. See Affidavit of Harry Jacobvitz, Exhibit 3 to Exhibit B to this Complaint.

32. When BQC learned of the reportable release, BQC notified the Massachusetts Department of Environmental Protection ("DEP") of the release in accordance with M.G.L. c. 21E and its associated regulations in the Massachusetts Contingency Plan ("MCP") on or about February 2011, which was within 120 days of obtaining knowledge of the release in October 2010.

33. Pursuant to the IES Report, the current building on the Property was constructed in 1985 and was previously occupied and used as a residence, which used a 275-gallon above ground storage tank ("AST"). While the IES Report states that another dry cleaner, Quality Cleaners, previously occupied the Site, such statement is incorrect because Quality Cleaners was located at 89 Huttleston Avenue, approximately ¼ mile away from the Property which is currently operated as Cumberland Farms. Exhibit 3 to Exhibit B of this Complaint.

1396765_1

34. A 2,000-gallon underground storage tank ("UST") used for fuel oil was installed at the Property and removed in 2008. While the 2,000-gallon UST was located in the area of the PCE release caused by the Defendants, there was no reported release of OHM during the 2007 removal process.

35. As part of IES's Phase II, IES installed five (5) borings and completed three (3) as monitoring wells at the Property. Boring IES-1 was advanced to the Southeast of the building, within the location of the former fuel oil UST at the Property. Boring IES-2 was advanced further to the South and downgradient of the Property. Boring IES-3 was advanced to the Northwest of the building on the Property near Spring Street in order to address the former gasoline and heating oil USTs at 1255 Huttleston Avenue/21 People's Way, which adjoins the site to the North-Northwest. IES-5 was advanced to the East of the site building, with an asphalt paved area, near the property line, in order to further address the on-site dry-cleaning activities. See Exhibit 4, ASTM Figure 3, to Exhibit B to this Complaint.

36. The results obtained from IES-1 in the area of the former UST revealed no EPH or PAH compounds in soil or groundwater and no VOCs in the shallow elevations due in part to the removal and replacement of clean fill following the excavation of the UST in this area. Slightly elevated levels of c5-c8 Aliphatic Hydrocarbons (570 ug/l) were detected in the sample obtained from IES-1, which is below the RCGW-2 Reportable Concentration ("RC") of 3,000 ug/l. Several VOCs were detected in the sample from IES-1, which were all below their respective RCGW-2 RCs, with the exception of PCE (1,700 ug/l), which exceeds the RC for GW-2 RC for 50 ug/l.

37. No EPH, PAH, VPH, or VOC compounds were detected in the samples from the IES-3 well above laboratory quantification limits. This confirms that the PCE detected in the groundwater

1396765_1

at the Property is not coming from an upgradient source such as the nearby Delkin Dry Cleaners to the Northwest of the Site.

38. Similarly, no EPH, PAH, or VPH compounds were detected in the samples from the IES-5 well above laboratory quantification limits. A low level of PCE (6.1 ug/l) was detected in the sample collected from IES-5 which is below the applicable RCGW-2 standard of 50 ug/l.

39. Therefore, a reportable release of petroleum constituents was not detected at the Property but a reportable release of PCE was detected in the groundwater at the Property and specifically in the area where the Defendants reported to Bush that a spill of PCE occurred.

40. In January of 2011, Bush retained Coler & Colantonio, Inc. ("C & C") to perform additional groundwater samples at the Site and to evaluate the extent of the release of PCE in soil and groundwater. C & C resampled the three monitoring wells installed by IES.

41. IES-1 was over-drilled to provide a greater depth and amount of groundwater given its shallow construction and lack of ability to recharge. C & C confirmed a RC of PCE in IES-1/now labeled CC-1 of PCE at 7,700 and related breakdown VOC products all above reportable RCGW-2 standards.

42. As a result of the RC, on February 11, 2011, C & C filed a Release Notification Form ("RNF") to the DEP on behalf of BQC. The DEP assigned Release Tracking Number ("RTN") 4-23102 to the release on February 22, 2012. The reportable release required BQC to perform additional response actions pursuant to M.G.L. c. 21E and the MCP.

43. To date, Bush has incurred a total of approximately $35,000.00 for site assessment, engineering, and other response costs to respond to the release of PCE at the Property in accordance with M.G.L. c. 21E and the MCP, and seeks compensation and/or indemnity from the Defendants for these response costs.

1396765_1

44. Additionally, as Bush is required under M.G.L. c. 21E, as owner and operator, to complete additional site assessment and remediation activities on the Property, its response costs are ongoing.

45. In late November 2011, C & C prepared a Proposal for Service to perform a comprehensive Phase I, II, and III services to delineate the full extent and to provide potential remedial options to address the PCE release. See C & C Estimate for Site Assessment dated November 30, 2011, attached as Tab A to Exhibit 3 to the July 27, 2012 Notice of Claim, which is Exhibit B to this Complaint. C & C estimated a budget of $61,200.00 for comprehensive Phase I-III services.

46. Additionally, C & C prepared an estimate of the cost to achieve a Permanent Solution with expected remedial response actions including the injection of chemical oxidants, Preparation of the Phase IV Plan, Phase V Remedial Operation Reports, and the eventual filing of an Response Action Outcome, perhaps including an Activity and Use Limitation ("AUL") at approximately $90,000.00 to $124,000.00. See C & C Estimate for Remediation dated November 30, 2011, attached as Tab B to Exhibit 3 to the July 27, 2012 Notice of Claim, which is Exhibit B to this Complaint.

47. Therefore, the Plaintiffs expect to incur future response costs in the amount of approximately $151,200.00 to $185,200.00 and seek compensation and reimbursement for these future response costs.

48. Bush also incurred attorney's fees and costs defending the Notice of Responsibility and/or response actions required by the DEP with respect to the PCE release, and seeks reimbursement and compensation for these fees and costs which total approximately $17,750.26. Bush continues to incur attorney's fees and costs.

49. While a Phase I Site Assessment was due on February 12, 2012, the Phase I Site Assessment proposed by C & C was not completed on time given budgetary constraints and the need for BQC to seek refinancing of the Property. BQC's current lender demanded that BQC seek refinancing of the Property as it sought to accelerate the payment of the entire Note on the Property ($480,000.00), and sought to foreclose on the Note even though payments were current.

50. The bank's action was taken as a result of the bank's discovery of the release of PCE, and it considers this a default under the terms of the loan. BQC has entered a forbearance agreement with its current lender and is seeking refinancing from a different lender to replace its current mortgage for the Property. Finally, if Bush loses the Property, which is valued at approximately $500,000.00 through foreclosure by its current lender, Bush will seek compensation for its losses including consequential damages.

51. Further, according to the Town of Fairhaven Assessor's Office, the Property is currently assessed at a value of $456,600. Upon information and belief, the Property has lost approximately half of value as a result of the OHM contamination and stigma associated with the release, and the Plaintiffs therefore seek $228,300.00 in property damages as a result of the diminution in property value from the Defendants.

52. On May 24, 2012, the Plaintiffs sent a Notice of Claim and Demand pursuant to M.G.L. c. 21E, §4(a) to Safety Kleen Systems, Inc. ("Safety Kleen") by certified mail. See May 24, 2012 Notice of Claim, attached as Exhibit C.

53. On July 19, 2012, Safety Kleen responded to the May 24, 2012 demand indicating that while it purchased the assets of Liquid Recycling and Cycle Solve in December 2007, it did not

purchase the liabilities and had no responsibility for the operations of Cycle Solve on or about the time of the July 2005 release. See July 19, 2012 Safety Kleen letter, attached as Exhibit D.

54. On July 27, 2012, the Plaintiffs sent a Notice of Claim and Demand pursuant to M.G.L. c. 21E, §4(a) to Cycle Solve and Liquid Recycling by certified mail. See July 27, 2012 Notice of Claim, Exhibit B.

55. Cycle Solve and Liquid Recycling failed to respond to the July 27, 2012 Notice of Claim and Demand letter.

56. On September 28, 2012, the Plaintiffs sent a Supplemental Notice of Claim and Demand pursuant to M.G.L. c. 21E, §4(a) by certified mail. See September 28, 2012 Notice of Claim, Exhibit E.

57. To date, Cycle Solve and Liquid Recycling failed to respond to the September 28, 2012 Supplemental Notice of Claim and Demand Letter.

58. The Plaintiffs therefore attempted to confer in good faith with the Defendants in an effort to resolve this dispute, and no settlement has been reached.

## COUNT I
### (Declaratory Judgment)

59. The Plaintiffs repeat and reallege the allegations in paragraphs 1 – 58.

60. An actual controversy exists as to (a) whether the Defendants are jointly and severally liable for all of the investigations and response actions necessary to adequately address the Property; (b) whether each Defendant is jointly and severally liable for the Plaintiff's past and future damages; and (c) the precise investigations and response actions to be conducted at the Property.

61. Wherefore, the Plaintiffs request a declaration that the Defendants are jointly and severally liable for all of the investigations and response actions necessary to address the Property adequately.

62. The Plaintiffs further request a declaration that the Defendants are jointly and severally liable for the Plaintiffs' past and future damages.

63. In the alternative, the Plaintiffs further request a declaration that the Defendants must assess, investigate, mitigate and/or remediate the OHM at the Property to a level of No Significant Risk and "close" the release(s) at the Property without the implementation of an Activity and Use Limitation ("AUL").

64. The Plaintiffs further request a declaration the Defendants are obligated to defend and indemnify Plaintiffs for the full amount, for any past, present and future liability to the DEP or any third party for damages incurred by or assessed against the Plaintiffs, including all defense costs and claims related costs.

65. In addition, Plaintiffs request a declaration that it is entitled to prompt reimbursement of all of its past, present and future defense costs, including without limitation environmental consultant costs, investigation and assessment costs, and attorneys' fees, and reimbursement of all costs associated with any other future claims made in connection with Plaintiffs' operation of and involvement with the Property.

## COUNT II
### (M.G.L. c. 21E, §§5 and 15)

66. The Plaintiffs repeat and reallege the allegations in paragraphs 1 – 65.

67. There has been a Release of Oil and/or Hazardous Materials at the Property, as those terms are defined in M.G.L. c. 21E, § 2.

68. The Defendants are strictly liable to the Plaintiffs for property damages under M.G.L. c. 21E, §5(a)(3) as "any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material."

69. The Defendants are further liable to the Plaintiffs for property damages under M.G.L. c. 21E, §5(a)(5) as "any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site."

70. These property damages, include, *inter alia*, damages as a result of any foreclosure actions, and damages incurred because of the diminution in property value.

71. Pursuant to G.L. c. 21E, §15, the Defendants are responsible for all reasonable attorney's fees, consultants' fees, experts' fees and costs incurred by the Plaintiffs relating to the release of OHM because they have failed to engage in pre-suit mediation and/or good faith negotiation.

## COUNT III
## (M.G.L. c. 21E, §§4 and 15)

72. The Plaintiffs repeat and reallege the allegations in paragraphs 1-71.

73. M.G.L. c. 21E. §4 provides that "any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of the response action."

74. Chapter 21E, §4(a) provides that any person other than the DEP who "has undertaken, is undertaking, or intends to undertake a necessary and appropriate response action or who is or reasonably believes that he might be liable pursuant to section five may notify any person he

13

reasonably believes is liable pursuant to section five that the response action has been taken or is being taken or of the notifier's intent to take such response action or to seek contribution, reimbursement, or equitable share from other persons..."

75. As owner and operator of the Property, the Plaintiffs are persons liable under section five, and thus have the ability to seek response costs pursuant to M.G.L. c. 21E, §4(a).

76. As a result of the release of OHM at the Property, the Plaintiffs have incurred and will continue to incur response costs, including site assessment, containment, clean-up costs, and other losses, including, without limitation, attorney and consultant fees incurred over the past several years.

77. Plaintiffs have attempted to confer in good faith with the Defendants in an effort to resolve all disputes between them pursuant to M.G.L. c. 21E, §4A. The Defendants have refused to provide reasonable contribution, reimbursement, or an equitable share of the Plaintiffs' response costs.

78. Pursuant to M.G.L. c. 21E, §4, the Defendants are liable to the Plaintiffs for their response costs incurred and to be incurred at the Property.

79. Further, pursuant to G.L. c. 21E, §15, the Defendants are responsible for reasonable attorney's fees, consultants' fees, experts' fees and costs incurred by the Plaintiffs relating to the release of OHM because they have failed to engage in pre-suit mediation and/or good faith negotiation.

## COUNT IV
### (Negligence)

80. The Plaintiffs repeat and reallege the allegations in paragraphs 1 – 79.

81. The Defendants were negligent in their delivery and removal of PCE from the Property, including in their transportation, use, storage, maintenance, disposal, handling, release and/or failure to detect, disclose or warn of OHM contamination.

82. As a direct and proximate result of this negligence, the Plaintiffs have been damaged, including but not limited to response costs, property damages, attorney's fees and other costs.

## COUNT V
### (Nuisance)

83. The Plaintiffs repeat and reallege the allegations in paragraphs 1 – 82.

84. The Defendants have caused a private nuisance by causing or allowing the release of OHM and by failing and refusing to stop, abate, remove or otherwise prevent the same and the nuisance is continuing.

85. The Defendants acts and/or omissions have unreasonably and substantially interfered with the Plaintiffs' use, benefit, and enjoyment of the Property because the Defendants, by their negligent, reckless, and/or willful acts and omissions, caused or permitted the contamination on the Property.

86. The Defendants knew or should have known that their acts and/or omissions would reasonably interfere with the Plaintiffs' ownership, use, benefit, and enjoyment of the Property.

87. As a direct and proximate result of the Defendants' acts and/or omissions, the Plaintiffs have incurred costs and suffered damages.

88. The Defendants are liable to the Plaintiffs for property damages, response costs and other expenses incurred by the Plaintiffs to respond to the ongoing nuisance.

## COUNT VI
### (Trespass)

89. The Plaintiffs repeat and reallege the allegations in paragraphs 1 – 88.

90. The Defendants have trespassed upon the Property by causing or allowing the release of OHM and by failing and refusing to stop, abate, remove or otherwise prevent the same and the trespass is continuing.

91. The Defendants have wrongfully caused or permitted the migration of OHM into the soil and/or groundwater at the Property. This trespass continues from day to day.

92. As a direct and proximate result of the trespass, the Plaintiffs have incurred costs and suffered damages.

93. The Defendants are liable to the Plaintiffs for property damages, response costs and other expenses incurred by the Plaintiffs to respond to the ongoing trespass.

### JURY CLAIM

Plaintiffs demand trial by jury.

### RELIEF REQUESTED

**WHEREFORE,** Plaintiffs move that this Court enter judgment against the Defendants and award the following relief:

1. Declare that the Defendants are legally responsible for the release of OHM at the Property; for the reasonable costs of the Plaintiffs' response actions to assess, contain, and remove the OHM; and for Plaintiffs' property damages;

2. Award Plaintiffs property damages, including, *inter alia*, those related to the diminution in property value, in an amount to be determined at trial;

3. Award Plaintiffs response costs, attorney's fees, consultants' fees and experts' fees that they have incurred and will continue to incur;

1396765_1

4. Alternatively, order the Defendants to perform reasonable and necessary response actions in accordance with appropriate federal, state and local laws;

5. Issue an order that the Defendants are required to defend and indemnify the Plaintiffs for any liabilities associated with the releases of solid and hazardous materials disposed of or released at the Property;

6. Award Plaintiffs costs and interest; and

7. Award Plaintiffs any other relief the Court deems appropriate.

Respectfully submitted,
BQC, INC. and HARRY JACOBVITZ, as Trustee of the BUSH REALTY TRUST,
By their attorneys,

/s/ Robert A. Fasanella
Robert A. Fasanella (BBO #548282)
rfasanella@rubinrudman.com
Michele A. Hunton (BBO# 667766)
mhunton@rubinrudman.com
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
(617) 330-7000

Dated: July 22, 2013

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on July 22, 2013 using the CM/ECF system which sent notification of this filing to all ECF registered counsel of record via e-mail generated by the Court's ECF system.

/s/ Michele A. Hunton
Robert A. Fasanella (BBO #548282)
rfasanella@rubinrudman.com
Michele A. Hunton (BBO# 667766)
mhunton@rubinrudman.com
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
(617) 330-7000

1396765_1